# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHILLIP GLAPION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 5893 |
| ) | |
| CSX TRANSPORTATION INC., ) | Wayne R. Andersen |
| ) | District Judge |
| Defendant. ) | |

## MEMORANDUM, OPINION AND ORDER

This matter is before the court on defendant CSX Transportation, Inc.'s motion for summary judgment. Plaintiff Phillip Glapion alleges in his complaint that CSX Transportation, Inc. ("CSXT") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981") when (1) plaintiff was prohibited by a third-party railroad from operating locomotive engines over its tracks after causing a train delay and (2) CSXT terminated plaintiff's employment after he engaged in dishonest conduct by submitting a forged medical certification form to support his request for leave under the Family and Medical Leave Act, 29 U.S.C §§ 2601, *et seq.* ("FMLA"). For the reasons set forth below, the motion for summary judgment [38] is granted.

## BACKGROUND

Plaintiff Phillip Glapion, an African-American, began his employment with CSXT as a conductor in January 1997 and was promoted to locomotive engineer in March 1998. On October 21, 2004, while traveling on track operated by Indiana Harbor Belt Railroad ("IHB"), the locomotive engine plaintiff was operating was involved in a train delay as the result of an

improperly aligned track switch that needed to be aligned manually. As a result of the delay, on October 26, 2004, CSXT received notification from IHB that plaintiff as well as the conductor with whom plaintiff was working on October 21, 2004 was barred from operating on IHB track. Plaintiff complained to CSXT's ethics and compliance hotline that he believed IHB's decision to bar him was discriminatory.

On October 26, 2004, plaintiff was notified that, pursuant to the requirements of a collective bargaining agreement between CSXT and his union, he was required to attend a CSXT investigation hearing to determine his responsibility with respect to the train delay incident. On December 14, 2004, CSXT held an investigation into the train delay. Then on August 25, 2005, Dan Micklos, a CSXT Assistant Division Manager in Chicago, issued a written reprimand to plaintiff in connection with the train delay incident. However, that reprimand was expunged from plaintiff's record because CSXT did not issue it within the time period required under the collective bargaining agreement.

Prior to the train delay incident, plaintiff requested leave under FMLA to care for his father. Plaintiff submitted a FMLA certification form for his father that CSXT received on or about October 19, 2004 after which CSXT approved plaintiff for FMLA leave to care for his father. Plaintiff's father died on February 5, 2005.

Both before and after his father's death, plaintiff took bereavement leave to be absent from work on January 8, 2005, February 11, 2005 and February 18, 2005. Plaintiff was charged with using bereavement leave under false pretenses and was required to attend an investigation to determine whether he had, in fact, misused bereavement leave. Plaintiff demonstrated during the investigation that he took bereavement leave on January 8, 2005 due to the death of a friend and

bereavement leave on February 11, 2005 for the death of his father. CSXT charged plaintiff with using FMLA leave under false pretenses on February 18, 2005 because CSXT only had approved FMLA leave for his father's death on February 5, 2005.

On March 4, 2005, eight days after he was charged with using FMLA leave under false pretenses, plaintiff requested additional FMLA leave to care for his mother. However, plaintiff did not submit the proper FMLA medical certification to support his leave request, and on April 20, 2005, CSXT denied his leave request.

Sometime after April 20, 2005, in an attempt to show CSXT that he had FMLA approval to care for his mother as of February 18, 2005 (the date for which he was charged with misusing FMLA leave), plaintiff submitted another FMLA certification form in support of his request to take leave to care for his mother. However, the FMLA certification plaintiff submitted was dated September 16, 2004 but was not received by CSXT until May 19, 2005. Because of the date discrepancy, Jeff Deakins, a CSXT FMLA Administrator, became suspicious and reviewed other documents in plaintiff's FMLA file. During the review, Deakins observed that CSXT had no record of receiving any FMLA certification for plaintiff's mother and that CSXT never had approved plaintiff to take FMLA leave to care for his mother.

Based on the review of his file, Deakins concluded that the FMLA certification form plaintiff had submitted to support his request for leave to care for his mother which was received on May 19, 2005 was a photocopy of the FMLA certification form that plaintiff had submitted for his father on October 19, 2004 with certain information altered to support plaintiff's request to FMLA leave to care for his mother.

On May 27, 2005 plaintiff was charged with dishonesty and violating CSXT Operating Rule GR-2 as a major violation under CSXT's Individual Development and Personal Accountability Policy ("IDPAP") and was removed from service and directed to attend an investigation to determine whether he had engaged in the conduct with which he was charged. Rule GR-2 states in relevant part:

> All employees must behave in a civil and courteous manner when dealing with customers, fellow employees and the public. Employees must not: 1. Use boisterous, profane, or vulgar language, 2. Enter into altercations while on duty or on company property, 3. Play practical jokes or engage in horseplay while on duty or while on company property, 4. Be disloyal, dishonest, insubordinate, immoral, quarrelsome, vicious, careless, or incompetent, 5. Willfully neglect their duty, 6. Endanger life or property, 7. Make false statements, or 8. Conceal facts concerning matter under investigation.

In response to the charge and investigation, plaintiff asserted that he had requested FMLA leave in August 2004 to care for both his father and his mother. Thereafter, plaintiff admitted that he had created an altered FMLA certification form for his mother and that he had submitted that altered form to CSXT to support his request for FMLA leave. Plaintiff stated that he made copies of the original FMLA certification form and altered the contents of the copies of the form by using white out correction fluid to construct separate certification form for his mother.

After the investigation, CSXT Division Manager Burrus concluded that plaintiff's use of bereavement leave on February 18, 2005 was inappropriate and that he had not been approved for FMLA leave to care for his mother. As a result, on April 12, 2006, plaintiff received a 30-day overhead suspension for using FMLA leave under false pretenses. Thereafter, a public law board convened by CSXT and plaintiff's union pursuant to the Railway Labor Act reviewed Burrus'

decision on the false pretenses charge and issued a decision denying plaintiff's and his union's challenge to the 30-day suspension he had received.

Based on the facts developed throughout the investigation, CSXT ultimately terminated plaintiff's employment on May 16, 2006 for violating CSXT Operating Rule GR-2 because plaintiff had been dishonest and had presented an altered medical certification to support his request for FMLA leave. Another public law board convened pursuant to the Railway Labor Act to review CSXT's decision to discharge plaintiff and issued a decision denying plaintiff's and his union's challenge to the termination of his employment.

Plaintiff filed two separate charges of employment discrimination against CSXT with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). The first charge alleged: (1) race discrimination and retaliation with respect to the train delay incident; (2) retaliation with respect to his removal from service on May 27, 2005 for falsifying FMLA documentation; and (3) race discrimination and retaliation with respect to CSXT"s issuance of a written reprimand in August 2005 with respect to the IHB train delay. Plaintiff's second charge alleged race discrimination and retaliation with respect to his removal from service on May 27, 2005 and the termination of his employment with CSXT on May 16, 2006.

## ANALYSIS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 277, 248 (1986). The nonmoving party is tasked with presenting specific, competent evidence to rebut the motion for summary judgment. *Butts v. Aurora Health Care, Inc.* 387 F.3d 921, 924 (7th Cir. 2004). We will evaluate the evidence in a light most favorable to the nonmoving party and will draw all reasonable inferences in their favor. *See Anderson*, 477 U.S. at 255.

**I.     Plaintiff Cannot Establish that CSXT Discriminated or Retaliated Against Him When He Was Barred by IHB from Operating Over its Tracks**

Plaintiff claims that CSXT discriminated and retaliated against him when IHB barred him from operating on its railroad after he was involved in a train delay and when CSXT issued a reprimand that later was expunged in connection with that train delay. Plaintiff asserts claims of discrimination and retaliation under both Title VII and Section 1981. Courts evaluate Section 1981 claims of discrimination and retaliation under the same framework as Title VII claims. *Watts v. SBC Services, Inc.*, No. 05 C 3111, 2006 WL 224054, at *1 (N.D. Ill. July 31, 2006).

Title VII requires that a plaintiff alleging employment discrimination or retaliation either provide direct proof of the employer's discriminatory intent or prove disparate treatment through an indirect, burden-shifting method. *Contreras v. Suncast Corp.,* 237 F.3d 756, 759 (7th Cir. 2001). Plaintiff has not presented any direct evidence of discrimination or retaliation. Given his inability to provide any direct evidence, plaintiff must proceed under the more commonly used indirect method of proof. *Sublett* v. *John Wiley & Sons, Inc.,* 463 F.3d 731, 736-37 (7th Cir. 2006). This burden-shifting approach, set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 793 (1973), requires that he first establish a prima facie case of discrimination and retaliation. *McDonnell Douglas,* 411 U.S. at 801.

Assuming plaintiff is able to make a prima facie showing of discrimination and/or retaliation, CSXT then would need to articulate a legitimate reason for its employment action consistent with a finding that unlawful discrimination or retaliation were not the cause of that action. *Sublett*, 463 F.3d at 737 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)). The burden would then shift back to plaintiff to "establish by a preponderance of the evidence that the defendant's proffered reasons are pretextual." *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995). Pretext is a "lie, specifically a phony reason for some action." *Sublett*, 463 F.3d at 737. To demonstrate a material issue of fact with respect to pretext, a plaintiff must show that the explanations given are not credible. *See id* (citing *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)).

### A. Plaintiff Cannot Establish a Prima Facie Case of Race Discrimination in Connection with the IHB Train Delay Incident, Investigation or Expunged Reprimand

In order to prove discrimination, plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was performing his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably by his employer than similarly situated employees who were outside the protected class. *See Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008). It is not disputed that plaintiff is a member of a protected class. However, he cannot establish a prima facie case of discrimination in connection with the IHB train delay because he was not satisfying CSXT's legitimate expectations and did not suffer any adverse employment action based on any decision by CSXT.

In addition, plaintiff has failed to identify any similarly situated employees who were treated more favorably than he was.

Plaintiff admits that he was involved in a train delay. Clearly, plaintiff was not performing his job duties in accordance with CSXT's legitimate expectations when he was involved in a train delay that was caused in part by his inability to realign railroad switches manually. Although plaintiff disputes the precise length of the train delay, that is immaterial and does not create any genuine issue with respect to the fact that he was involved in a train delay that resulted in part from his inability to realign railroad switches manually and in a timely manner – a task that plaintiff admits CSXT expected him to know how to competently perform.

Also, it is clear that he did not suffer any adverse employment action based on any decision by CSXT. Rather, IHB made the decision to bar plaintiff from operating on IHB track. Although plaintiff asserts that CSXT had a close economic relationship IHB, he has not presented any evidence that CSXT had any input into IHB's decision that prohibited plaintiff from operating over IHB track, and plaintiff does not dispute that CSXT had to abide by IHB's decision and ensure that he did not travel over IHB tracks.

The fact that CSXT conducted an investigation into the train delay and issued a reprimand that subsequently was expunged does not constitute an adverse employment action. Neither the investigation nor the expunged reprimand caused plaintiff to suffer any adverse employment action. *See Brown v. Potter*, No. 06 C 6792, 2008 WL 4091005, at *10 (N.D. Ill. Aug. 28, 2008) (finding that reprimands "do not rise to the level of an adverse employment action" and that the "issue [was] mooted" because the reprimand was expunged); *Hilt-Dyson v. City of Chicago*, No. 99 C 6307, 2001 WL 436316, at *9 (N.D. Ill. April 27, 2001) ("[I]t is

doubtful that the investigation alone, unaccompanied by any tangible job consequences, would be considered an adverse employment action....").

Plaintiff's discrimination claim fails for the additional reason that he cannot identify any non-African American individual who similarly caused a train delay and was treated more favorably than he was. Plaintiff cites to a caucasian CSXT employee D.E. Connell who was barred by another railroad but for a shorter period of time than plaintiff was barred. However, plaintiff has not presented any admissible evidence demonstrating that Connell engaged in conduct similar to plaintiff that caused a train delay, that the same decision makers were involved, or that "there were no differentiating or mitigating circumstances as would distinguish . . . [CSXT's] treatment of them." *Watts*, 2006 WL 2224054, at *5. Plaintiff has nothing more than vague, unsupported allegations regarding Connell's train delay.

Plaintiff also identifies Tom Gilwa, J.J. Clasby and J.K. Lugar as additional similarly situated individuals who CSXT allegedly treated more favorably than he was. However, Gilwa is not similarly situated to plaintiff because there is no evidence that Gilwa was barred by any railroad from operating on its tracks. Clasby and Lugar also are not similarly situated as they were involved in a train collision (not a train delay) and were suspended for 45 days by CSXT. Courts have firmly established that "[a] similarly situated employee must be similar in all material aspects. . . . There must be a substantial similarity so as to create the inference that discriminatory intent is the reasons for differing treatment." *Lillie v. Chartwells*, No. 04 C 5453, 2007 WL 951900, at *4 (N.D. Ill. March 26, 2007). Without more, plaintiff cannot show that CSXT treated any similarly situated employees outside of his protected class more favorably than he was treated.

9

Having failed to identify any genuine issues of material fact suggesting that (1) CSXT played any role is IHB's decision to bar plaintiff from operating on IHB track; (2) CSXT's investigation and later-expunged reprimand were adverse employment actions, or (3) there are any similarly situated individuals outside his protected class whom CSXT treated more favorably than he was, plaintiff cannot establish a prima facie case of race discrimination.

### B. Plaintiff Has No Evidence of Retaliation with Respect to the Train Delay Incident, Investigation or Expunged Reprimand

Plaintiff argues that CSXT investigated the train delay incident in retaliation for plaintiff's complaint to CSXT's Senior Road Foreman of Engines Dennis Biegel that IHB's decision to bar him was racially discriminatory. Plaintiff further claims that CSXT issued the August 25, 2005 reprimand in retaliation for his having filed and amended his April 26, 2005 charge of employment discrimination with the IDHR. For the same reasons that plaintiff's discrimination claim fails, plaintiff's efforts to prove retaliation also fall short.

In order to prove retaliation, a plaintiff must demonstrate: (1) he engaged in a statutorily protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) he suffered a materially adverse action; and (4) he was treated less favorably by his employer than other similarly situated employees who did not engage in statutorily protected activity. *Agyropoulos v. City of Alton*, 539 F. 3d 724, 733 (7th Cir. 2008). As discussed above, plaintiff was not meeting CSXT's legitimate expectations in his job performance. CSXT did not cause plaintiff to suffer any materially adverse action with respect to the IHB bar . CSXT did not make the decision to bar plaintiff from traveling on IHB track, and the discipline that CSXT did issue – a reprimand – was later expunged. Moreover, plaintiff has no evidence that the

10

reprimand had any adverse effect on him whatsoever because at the time CSXT issued the reprimand in August 2005, plaintiff already had been removed from service for dishonestly for submitting an altered FMLA certification form in May 2005. Thus, plaintiff cannot establish a prima facie case of retaliation.

### C. Plaintiff Has No Evidence of Pretext

Even if plaintiff could establish a prima facie case of discrimination or retaliation with respect to IHB's decision to bar him, CSXT's investigation into the train delay or the expunged reprimand, he still is unable to establish that CSXT's legitimate explanation for those actions is pretext for discrimination or retaliatory animus. To demonstrate pretext, a plaintiff must show the reasons for the employer's decision had no basis in fact and that the stated reason was not the real reason for its action. *Atanus*, 520 F.3d at 674. "The main inquiry in determining pretext is whether the employer honestly acted on the stated reasons rather than whether the reason for [adverse employment action] was a correct business judgement." *Id.* Pretext is a "lie, specifically a phony reason for some action." *Sublett*, 463 F.3d at 737. To demonstrate a material issue of fact with respect to pretext, plaintiff must show that the explanations given for his inability to travel on IHB tracks were not credible. *See id* (citing *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)).

Plaintiff has not presented any evidence of pretext. It is undisputed that he was involved in the train delay incident. CSXT did not make the decision to bar him from IHB and, therefore, could not have had any pretextual discriminatory intent with respect to a decision that it did not make. Plaintiff also has no evidence that CSXT's stated reason for investigating his involvement

11

in the train delay was lie or that issuing the reprimand, which was later expunged, was racially motivated or retaliatory.

Consistent with CSXT's usual process pursuant to the collective bargaining agreement, it initiated an investigation process for plaintiff after the IHB barred him following the October 21, 2004 train delay. Even though CSXT determined that plaintiff's involvement in the train delay incident warranted a written reprimand, that reprimand was expunged because CSXT did not issue it within the time period required by the collective bargaining agreement. As a result, plaintiff's claims of discrimination and retaliation with respect to the train delay incident, investigation and expunged reprimand fail, and CSXT's motion for summary judgment is granted.

**II.     Plaintiff Cannot Show That CSXT Discriminated or Retaliated Against Him When He Was Removed from Service and Discharged for Dishonesty for Submitting Altered FMLA Documentation**

For similar reasons that plaintiff's discrimination and retaliation claims based on the IHB train delay cannot survive summary judgement, nor can his discrimination and retaliation claims based on his removal from service and discharge survive. Plaintiff submitted to CSXT an altered FMLA certification form, which was dishonest and violated a legitimate CSXT policy. He therefore cannot establish that he was performing in accordance with CSXT's reasonable expectation. However, even if even if plaintiff could establish a prima facie case of discrimination or retaliation with respect to his removal from service and discharge for dishonesty for submitting altered FMLA documentation, he still is unable to establish that CSXT's explanation for its actions is pretext for discrimination or retaliatory animus.

### A. Plaintiff Cannot Establish a Prima Facie Case of Race Discrimination in Connection with His Removal from Service and Ultimate Discharge for Dishonesty for Submitting Altered FMLA Documentation

On or about October 19, 2004, plaintiff requested leave under FMLA to care for his father and submitted a FMLA certification form. CSXT approved plaintiff's request for leave to care for his father. Plaintiff's father died on February 5, 2005.

Both before and after his father's death, plaintiff took bereavement leave to be absent from work on January 8, 2005, February 11, 2005 and February 18, 2005. Plaintiff was charged with using bereavement leave under false pretenses and was required to attend an investigation to determine whether he had, in fact, misused bereavement leave. Plaintiff demonstrated during the investigation that he took bereavement leave on January 8, 2005 due to the death of a friend and bereavement leave on February 11, 2005 for the death of his father. CSXT charged plaintiff with using FMLA leave under false pretenses on February 18, 2005 because CSXT only had approved FMLA leave for his father's death on February 5, 2005.

On March 4, 2005, eight days after he was charged with using FMLA leave under false pretenses, plaintiff requested additional FMLA leave to care for his mother. However, plaintiff did not submit the proper FMLA medical certification to support his leave request, and on April 20, 2005, CSXT denied his leave request. Sometime after April 20, 2005, in an attempt to show CSXT that he had FMLA approval to care for his mother as of February 18, 2005 (the date for which he was charged with misusing FMLA leave), plaintiff submitted another FMLA certification form in support of his request to take leave to care for his mother. However, the FMLA certification plaintiff submitted was dated September 16, 2004 but was not received by CSXT until May 19, 2005.

13

Because of the date discrepancy, Jeff Deakins, a CSXT FMLA Administrator, became suspicious and reviewed other documents in plaintiff's FMLA file. During the review, Deakins observed that CSXT had no record of receiving any FMLA certification for plaintiff's mother and that CSXT never had approved plaintiff to take FMLA leave to care for his mother.

Based on the review of his file, Deakins concluded that the FMLA certification form plaintiff had submitted to support his request for leave to care for his mother which was received on May 19, 2005 was a photocopy of the FMLA certification form that plaintiff had submitted for his father on October 19, 2004 with certain information altered to support plaintiff's request to FMLA leave to care for his mother.

On May 27, 2005 plaintiff was charged with dishonesty and was removed from service. He was directed to attend an investigation to determine whether he had engaged in the conduct with which he was charged. In response to the charge and investigation, plaintiff asserted that he had requested FMLA leave in August 2004 to care for both his father and his mother. However, plaintiff later admitted that he had created an altered FMLA certification forms for his mother and that he had submitted the altered form to CSXT to support his request for FMLA leave. Plaintiff stated that he made copies of the original FMLA certification form and altered the contents of the copies of the form by using white out correction fluid to construct a separate certification forms for his mother. Based on the facts developed throughout the investigation, CSXT ultimately terminated plaintiff's employment on May 16, 2006 for violating CSXT Operating Rule GR-2 because plaintiff had been dishonest and had presented an altered medical certification to support his request for FMLA leave.

While it is undisputed that had plaintiff submitted a FMLA form with a valid certification from his mother's doctor in a timely fashion to request FMLA leave for his mother, CSXT may, in fact, have granted him leave. However, plaintiff admits that he submitted an altered FMLA certification form that he created for his mother using photocopies and white- out correction fluid. The FMLA certification form that plaintiff submitted was not valid as it was a photocopy of a form plaintiff had previously submitted for his father and did not contain a valid doctor certification. This court acknowledges that plaintiff has submitted a letter from his parents' doctor stating that the altered form that plaintiff created with white-out did, in fact, contain accurate and true information about his ailing mother. Notwithstanding this letter from the doctor, CSXT still had the right to discharge plaintiff for his dishonest conduct. Plaintiff admits that he created and submitted that altered form to support his request for FMLA leave to care for his mother. Based on this dishonest conduct, CSXT removed plaintiff from service and ultimately discharged him.

In *Smith v. The Hope School*, No. 08 C 2176, 2009 WL 804664 (7th Cir. March 30, 2009), the Seventh Circuit recently affirmed summary judgment in favor of the employer on a FMLA claim in which there was "an especially strong inference that an employee submitted false paperwork to her employer" that justified the termination of plaintiff's employment. 2009 WL 804664, at *5. In *Hope School*, the plaintiff altered her FMLA certification, backdated the FMLA certification to support her leave requests and submitted forms that her physician never completed. *Id.* at *2. The facts in this case like *Hope School* create an equally strong inference that a reasonable fact finder could only conclude that plaintiff created and submitted altered FMLA documentation to CSXT. Clearly, plaintiff was not meeting CSXT's legitimate

expectations, and plaintiff cannot establish a prima facie case of discrimination or retaliation. Whether the court agrees with the decision of CSXT is not an issue that creates a disputed issue of material fact.

Plaintiff argues that CSXT's decisions to remove him from service and terminate his employment for submitting altered FMLA documentation were based on his race and in retaliation for having complained about employment discrimination. Plaintiff focuses on the temporal proximity between his April 26, 2005 filing of his IDHR charge and his removal from service for submitting a forged FMLA certification form on or about May 19, 2005.

It is well settled that "mere temporal proximity is not enough to establish a genuine issue of material fact." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008). Plaintiff has no additional evidence beyond the temporal proximity that even suggests a discriminatory or retaliatory motive in connection with his removal from service or the subsequent termination of his employment. To the contrary, the undisputed facts establishes that his discrimination complaints had nothing to do with those decisions. Rather, it was plaintiff's dishonest conduct and submission of an altered FMLA certification form that led to his discharge.

### B. Plaintiff Has No Evidence of Pretext

However, even if plaintiff could establish a prima facie case of discrimination or retaliation with respect to CSXT's decision to discharge him, he still is unable to establish that CSXT's legitimate explanation for those actions is pretext for discrimination or retaliatory animus. As discussed above, "[t]he main inquiry in determining pretext is whether the employer honestly acted on the stated reasons rather than whether the reason for [adverse employment

16

action] was a correct business judgement." *Id.* It is well-settled, in a pretext analysis, that courts "do not sit as a super personnel review board that second guesses an employer's facially legitimate decisions. Rather, [courts] ask only whether the employer's explanation was honestly believed." *Agryropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (internal quotations and citations omitted).

Plaintiff has not presented any evidence of pretext. It is undisputed that he submitted an unverified and altered FMLA certification in support of his request for FMLA leave and that CSXT had the honest belief that plaintiff forged the FMLA certification form. Whether the medical information in the altered FMLA certification form that plaintiff submitted for his mother was factually accurate does not change the fact that CSXT believed that he had submitted a forged certification. Even if that belief was mistaken, plaintiff has not shown that CSXT did not honestly question the validity of the document. If the belief was honest and there is no evidence suggesting otherwise, then the court will not, and cannot, interfere. As a result, plaintiff's claims of discrimination and retaliation with respect to his removal from service and discharged for dishonesty for submitting altered FMLA documentation also fail, and CSXT's motion for summary judgment is granted.

**CONCLUSION**

For all of the reasons set forth in this court's Memorandum Opinion and Order, defendant CSX Transportation Inc.'s motion for summary judgment [38] is granted. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: February 9, 2010